**CHALLENGER SALES & SUPPLY, Formerly Drill Systems, a Division of Challenger International Services, Inc., Appellant,**

v.

**Jules HALTENBERGER, et al., Appellee.**

**No. 09 85 194 CV.**

Court of Appeals of Texas, Beaumont.

May 14, 1987.

Rehearing Denied June 3, 1987.

Daniel A. Hyde, Vinson & Elkins, Houston, for appellant.

William H. Young, Young & Hampton, Houston, Guy E. Hopkins, Hopkins & Corley, Conroe, for appellee.

## OPINION

DIES, Chief Justice.

In the spring of 1981, Jules Haltenberger contracted to purchase three drilling rigs from Skytop Brewster, Inc. The completed rigs were scheduled to be delivered in September 1981, October 1981, and January 1982. Only one of these rigs was ever delivered to Haltenberger. This was the NE–95 rig, originally scheduled for delivery in September 1981.

Haltenberger authorized Freddie Fredericksen, a Montgomery County resident, and Tommy Meeks to sell the three rigs for him. In July 1981, Fredericksen and Meeks negotiated an agreement with a representative of Challenger Sales and Supply (Challenger) whereby Challenger agreed to purchase the three drilling rigs. Under the terms of this agreement, Challenger was to pay a commission of three percent of the purchase price of the rigs to Fredericksen and Meeks. Challenger paid an advance on this commission of $75,000.00 to Fredericksen and Meeks.[1] Challenger, a foreign corporation, has its principal place of business in Texas in Harris County. When the first rig (the NE–95, scheduled for September delivery) was finally ready for delivery,

---

1. The $75,000.00 fell short of the full commission owed on the sale of the September NE–95 rig alone.

Challenger refused to pay Haltenberger for the rig.

Challenger filed suit in Harris County against Fredericksen and Meeks, alleging that the contract for the sale of the NE–95 rig had been cancelled by Haltenberger, and seeking a refund of the $75,000.00 advance on commission. Fredericksen and Meeks filed a plea of privilege which was granted, and the suit was transferred to Montgomery County.

Subsequently, Haltenberger filed suit against Challenger in Montgomery County, alleging that Challenger breached only the contract to purchase the NE–95 rig scheduled for September delivery. Challenger filed a motion to transfer venue to Harris County. Haltenberger filed a controverting plea which asserted that venue was proper because:

(1) The written contract expressly stated that Challenger agreed to receive delivery at the Skytop Brewster factory in Montgomery County, so that under *TEX. REV.CIV.STAT.ANN. art. 1995, sec. 3(e)*, venue was proper in Montgomery County.

(2) Challenger committed a fraud in Montgomery County so that under *TEX. REV.CIV.STAT.ANN. art. 1995, sec. 7*, venue was proper in Montgomery County.

(3) Challenger was a foreign corporation doing business in Texas and that Haltenberger's cause of action originated in whole, or in part, in Montgomery County, so that under *TEX.REV.CIV.STAT. ANN. art. 1995, sec. 27*, venue was proper in Montgomery County.

Haltenberger subsequently amended his pleadings, naming Fredericksen as a defendant. Haltenberger alleged that his damages were either caused by Challenger's breach of the agreement or, alternatively, by Fredericksen's representations that such an agreement had been formed with Challenger. Based on his amended pleadings, Haltenberger filed a supplemental controverting plea in which he urged that since Fredericksen was a resident of Montgomery County, venue as to Challenger was proper in Montgomery County under *TEX.REV.CIV.STAT.ANN. art. 1995, sec. 4*. Challenger then filed a supplemental motion to transfer venue, urging that Fredericksen had been fraudulently joined as a defendant solely for the purpose of establishing venue in Montgomery County. The trial court overruled Challenger's motion to transfer venue. Challenger re-urged its motion to transfer venue immediately prior to trial and at the close of all evidence. The trial court again overruled the motion. After the trial court overruled the motion to transfer venue, Challenger's suit against Fredericksen and Meeks and Haltenberger's suit against Challenger were consolidated. A jury found all issues in favor of Haltenberger and against Challenger. Judgment was entered in accordance with the jury's verdict, holding Challenger liable for breach of contract with Haltenberger, Fredericksen, and Meeks.

■ Challenger has perfected this appeal from the judgment of the trial court. Fredericksen and Meeks agree that their right to judgment in this case depends upon whether Haltenberger is entitled to judgment. By its first point of error, Challenger argues that the trial court erred in overruling its motion to transfer venue. Since the trial court filed no findings of fact or conclusions of law as to his ruling on the venue issue, we must affirm the judgment of the trial court if the petition and proof brings the case within the general rule that venue is proper in the county of the defendant's residence, or where the cause of action, or a part thereof, arose, or within any exception to this general rule. *Gallini v. Whelan*, 625 S.W.2d 755 (Tex.App.—San Antonio 1981, no writ).

■ Challenger argues that there is no provision in the venue laws of Texas which would render venue proper in Montgomery County. Haltenberger argues that venue was proper under several provisions of law. He also argues that venue was proper in Montgomery County because Challenger's suit against Fredericksen and Meeks was transferred to Montgomery County, and Challenger did not object to the consolidation of this case and Haltenberger's suit against Challenger in that county. We

agree with this latter argument. Because Challenger allowed its suit against Fredericksen and Meeks to be consolidated and tried together with Haltenberger's · suit, Challenger is estopped from raising any complaint that venue as to Haltenberger's suit was improper. *See TEX.CIV.PRAC. & REM.CODE ANN. sec. 15.061* (Vernon 1986). Appellant's first point of error is overruled.

By its second point of error, Challenger argues that the trial court erred in overruling its motion for judgment notwithstanding the verdict because the evidence established, as a matter of law, that the September NE–95 rig was committed for sale to another person. Challenger's third point of error urges that the jury's finding that Haltenberger was able to perform his obligation under the contract was against the great weight and preponderance of the evidence. In reviewing "no evidence" points of error, this court must consider only the evidence tending to support the judgment of the trial court, viewing such evidence in the light most favorable to the judgment, and giving effect to all reasonable inferences that may be properly drawn therefrom, and disregarding all conflicting evidence. *See Butler v. Hanson*, 455 S.W.2d 942 (Tex.1970). In deciding Appellant's factual insufficiency point of error, we must weigh both the evidence tending to support the jury's verdict and the evidence which would tend to disprove the existence of the fact. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Challenger argues that the evidence establishes that Haltenberger had contracted to sell the NE–95 rig in question to a Paul Davis in the spring of 1981, before he offered it for sale to Challenger. We find that the evidence conclusively establishes that Haltenberger had agreed to sell the rig to Davis. However, Haltenberger testified that the deal with Davis fell apart when Davis revoked a letter of credit in late spring or early summer, before the agreement for the sale of the rig was entered into with Challenger. He also testified that near the time the rig was ready for delivery, and after Challenger had re-

fused to purchase the rig, he agreed to let Davis buy the rig if he came up with the full price first. Therefore, there was some evidence that between the time he agreed to sell the rig to Challenger, and the time when Challenger breached its obligation to purchase the rig, Haltenberger was ready and able to perform his obligation to sell the rig to Challenger. Appellant's second point of error is overruled.

At trial, a letter written by Haltenberger in August of 1982 to a Mr. Braunig at Skytop Brewster, Inc., was introduced. In that letter Haltenberger stated:

"When the rig was ready for delivery, Paul Davis called me up in Buenos Aires stating that he can not take delivery of this [NE 95] rig because he did not get the expected contract and has no money...."

Challenger argues that this letter shows that Haltenberger's contract to sell the September NE–95 rig to Davis was still in force in September 1981, and that during the entire time he dealt with Challenger, Haltenberger was obligated to sell the rig to Davis instead.

Mr. Haltenberger explained that the letter mentioned above was written to Skytop Brewster because they refused to pay his commission on the rig. He stated that he did not set out the whole history of the transaction in the letter. He stated he was angry over the way Skytop had treated him with regard to a commission he claims that company owed him. After reviewing the entire record, we are unable to hold that the jury's finding that Haltenberger was able to perform his obligation to sell the rig to Challenger was so against the great weight and preponderance of the evidence as to be manifestly unjust; therefore, appellant's third point of error is overruled.

By its fourth point of error Challenger argues that the trial court erred in overruling its motion for judgment notwithstanding the verdict because the evidence established, as a matter of law, that two of the three rigs which were the subject of the July 13, 1981 agreement were cancelled by Jules Haltenberger's agent, Tommy Meeks. Challenger's fifth point of error urges that

the jury's finding that two of the three rigs were not cancelled is against the great weight and preponderance of the evidence. These points of error are superfluous.

■ Challenger urged at trial that Haltenberger cancelled the production of the September NE–95 rig in August of 1981, or that his agent had so informed Challenger, and that, therefore, Challenger was not obligated to purchase that rig. In another special issue, the jury was asked to determine whether the original agreement of the parties had been cancelled, in whole or in part, so as to relieve Challenger of its obligation to purchase the NE–95 rig originally set to be completed in September 1981. The jury found against Challenger on this latter issue. Whether two of the three rigs were cancelled by Haltenberger is not relevant to the rights of the parties unless the jury found that the September NE–95 rig was one of the cancelled rigs. Appellant's fourth and fifth points of error are, therefore, overruled.

By its sixth point of error, Challenger argues that the trial court erred in overruling its motion for judgment notwithstanding the verdict because the evidence established, as a matter of law, that the original agreement as to the sale and purchase of the three drilling rigs was cancelled, so as to relieve Challenger of its obligation to purchase the September NE–95 rig. Challenger's seventh point of error urges that the jury's finding that the original agreement was not so cancelled was against the great weight and preponderance of the evidence.

Tommy Meeks, who was authorized by Haltenberger as his agent for the sale of the rig in question, testified by deposition that Haltenberger cancelled two of the three rigs in August or some earlier time. Meeks testified that by mid-August of 1981 the transaction had become a "one rig deal." Meeks had told Challenger's representatives of this fact in August 1981. Meeks' testimony does not, however, shed any light upon the issue of whether the September NE–95 rig was one of the two rigs so cancelled. Fredericksen testified that Meeks was mistaken in saying two of

the three rigs had been cancelled in August of 1981. He stated that the two rigs' production and delivery dates had only been delayed.

In late August or early September, 1981, a meeting was held in Houston, in which Haltenberger and Challenger representatives discussed the transaction here in question. Challenger argues that since the evidence shows that, as a result of that meeting, Challenger opened a letter of credit for the purchase of another of the three rigs (an "NE–12" rig), and that the September NE–95 rig was already committed for sale to Davis, the evidence proves conclusively that a mutual agreement of the parties was formed, by which Challenger was no longer obligated to purchase the September NE–95 rig. Haltenberger testified that at the August 27, 1981 meeting, Challenger representatives stated they wanted to make some changes in the language of the formal, written agreement concerning their purchase of the September NE–95 rig. He stated that this was why Challenger told him they were delaying Challenger's letter of credit concerning the September NE–95 rig. Haltenberger's testimony indicates that Challenger still considered itself obligated to purchase the rig in question at that time. He denied that he agreed to relieve Challenger of its obligation to purchase this rig.

■ From a thorough review of the record, we conclude that there was some evidence that the original contract was not modified so as to relieve Challenger of its obligation to purchase the rig in question. We also hold that the evidence, though conflicting, was factually sufficient to support the jury's finding that no such mutual agreement to alter the original contract was ever made. Therefore, Appellant's sixth and seventh points of error are overruled.

■ In its eighth and ninth points of error Challenger argues that the evidence is conclusive that Haltenberger breached the contract first or, alternatively, that the finding of the jury that Haltenberger did not commit the first breach, was against the great weight and preponderance of the

458

evidence. Challenger's brief does not make clear what conduct by Haltenberger they contend to be a breach of the contract. If Challenger means that Haltenberger breached the agreement by making it at a time when the rig in question was committed for sale to Davis, we have already held that the evidence was sufficient to support the jury's finding that Haltenberger was able to perform the contract. If Challenger means that Haltenberger breached the agreement by cancelling two of the three rigs in August of 1981, there was no evidence that Haltenberger cancelled the NE–95 rig that is the subject of the action. Therefore, Appellant's eighth and ninth points of error are overruled, because the evidence was sufficient, legally and factually, to support the jury's verdict.

By its tenth point of error Challenger urges that the trial court erred in overruling its motion for a new trial on the basis of newly discovered evidence. The new evidence is a contract signed by Haltenberger and a Challenger agent on August 17, 1981. This contract concerns the sale of an "NE–12" rig. Challenger argues that the newly discovered contract shows that the original three-rig deal had been cancelled by agreement of the parties on or before August 27, 1981. The contract does not mention any agreement concerning the sale of any rig other than the NE–12. It does not indicate that the three-rig deal had been cancelled. Furthermore, Challenger called its agent who signed the "newly discovered" contract as a witness at trial, and he did not even testify to the existence of this document. When discovered, the document was in the possession of a law firm which had represented Challenger in its suit against Meeks and Fredericksen.

 In order for a party to obtain a new trial, he must prove that the evidence has come to his knowledge since the trial, that it was not owing to the want of due diligence that it did not come to the party's knowledge sooner, that the evidence is not cumulative, and finally, that it is so material that it would probably produce a different result if a new trial was granted. *Jackson v. Van Winkle*, 660 S.W.2d 807

(Tex.1983). With regard to the second requirement of *Jackson, supra,* it is apparent that the same diligence which led to the discovery of the document subsequent to the trial would have had the same result if exercised prior to the trial, therefore, the trial court did not err in overruling the motion for new trial. *Dorbandt v. Jones,* 492 S.W.2d 601 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.). Furthermore, it seems unlikely that a document which does not even refer to the NE–95 rig in question or the original three-rig agreement would lead to a different result should a new trial be granted. *See Jackson v. Van Winkle, supra.* Appellant's tenth point of error is overruled and the judgment of the trial court is affirmed.

AFFIRMED.